## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSIE BARBOSA, ROBERT JOHNSON, and DARREN SPECHT, | |
| Plaintiffs, | |
| v. | Civil Action No.: 22-12013 |
| MASSACHUSETTS DEPARTMENT OF STATE POLICE, | |
| Defendant. | |

## **COMPLAINT**

Plaintiffs Jessie Barbosa, Robert Johnson, and Darren Specht (collectively, "Plaintiffs") file this action for equitable relief and damages against Defendant Massachusetts Department of State Police ("MSP") to seek redress from MSP's religious-based discrimination against them in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII") and the Massachusetts Civil Rights Act, M.G.L. c. 151B, §4(1)(A) ("MCRA") and MSP's infringement upon Plaintiff's substantive and procedural due process rights, and in support thereof, Plaintiffs state as follows:

## **NATURE OF THE ACTION**

Jessie Barbosa, Robert Johnson, and Darren Specht are public servants who dedicated their lives to protecting the citizens of Massachusetts for collectively more than 50 years. As State Troopers, they place their very own lives in danger, prioritizing the safety and lives of others. To contend that Plaintiffs all of a sudden abandoned their dedication to protecting life after doing so for more than a half century combined is a precarious assertion to say the least. But that is what MSP contends. Of course, a reasonably inquisitive mind would be curious—is this true?

The answer is no–it is not true that Plaintiffs placed anyone's life in danger. But even if MSP was somehow able to establish its assertion held a scintilla of veracity, Plaintiffs easily vitiate MSP's contention on the basis that Plaintiffs had a just—and constitutionally-protected—reason for refusing to comply with MSP's mandatory COVID-19 vaccination policy.

As religious persons, Plaintiffs sincerely believe abortion is a sin and cannot in good faith or conscience knowingly inject a substance into their bodies they know was derived or created through the use of aborted fetal cell line tissue and as a result, Plaintiffs were prohibited from complying with MSP's mandatory COVID-19 vaccination policy. Indeed, the sanctity with which our nation holds the importance of the preservation of religious freedom is found in the First Amendment to the United States Constitution. But MSP did not care about Plaintiffs constitutionally protected freedoms; rather, MSP its prioritized insatiable (and arbitrary) appetite to hold itself out as a 100% vaccinated department above all else.

Aspiring to attain this arbitrary and self-imposed accolade, MSP devised what it believed to be a "win-win" plan: MSP would begin targeting its unvaccinated employees and the only outcomes it believed to be possible were that its unvaccinated employees either (1) succumbed to the pressure and got vaccinated, or (2) MSP would remove them from the State Police. What MSP did not contemplate, however, is that their unlawful plot would be the nucleus of an action in federal court—but MSP's unlawful scheme was exposed on November 22, 2021.

Specifically, MSP's scheme is best summarized as follows:

***First***, MSP made available a procedure by which Plaintiffs could request a religious accommodation to its mandatory vaccination policy. Upon receipt of Plaintiffs' requests, MSP scheduled an interview with each respective Plaintiff. The purpose of the interview was to afford

MSP an opportunity to impugn the sincerity with which each respective Plaintiff held his or her religious beliefs.

**Second**, once the interview concluded MSP *claimed* it would inform each respective Plaintiff whether their accommodation request was approved or denied; but this is patently false. In reality, MSP **never** contemplated approving Plaintiffs' religious accommodation requests and instead, utilized the aforesaid interviews as a means to determine the basis upon which MSP would *deny* each respective Plaintiff's accommodation request.  If MSP successfully obtained statements that it believed would suffice in asserting a given Plaintiff's religious belief was insincere, MSP would deny his or her request on the basis of "lack of sincerity.".[1] If MSP was unable  to obtain statements it believed sufficiently tainted the sincerity of the sincerely held religious beliefs asserted, MSP would rely upon a secondary basis and deny a given Plaintiff's accommodation request on the frivolous ground that the provision of an accommodation imposed upon MSP an undue hardship.[2]

**Third,** after denying all three Plaintiffs' requests, MSP reiterated they must be vaccinated on or before October 17, 2021, or otherwise, Plaintiffs would be subject to discipline. Knowing Plaintiffs' religious beliefs availed them of constitutional protection against being subjected to adverse employment action for their inability to comply, MSP manufactured an alternative reason to discipline them and ultimately, terminate their employment.

**Fourth**, to manufacture an unlawful pretext upon which MSP intended to ultimately rely in taking retaliatory adverse employment action against Plaintiffs, MSP developed a progressive discipline regimen ("PDR") which it would employ once Plaintiffs failed to meet the October 17,

---

[1] "Lack of sincerity" is the basis upon which MSP relied in asserting Robert Johnson was not entitled to a religious accommodation.
[2] "Undue hardship" is the basis upon which MSP relied in asserting Jessie Barbosa and Darren Specht were not entitled to sincerely held religious beliefs.

2021 vaccination deadline. Step one involved placing Plaintiffs on an unpaid, five (5) day suspension for engaging in "employee misconduct". But of course, Plaintiffs' exercise of their constitutionally protected rights cannot conceivably be construed as "employee misconduct" – and to make matters more difficult, MSP had to navigate around Plaintiffs' collective bargaining agreements ("CBA") which *inter alia* vested in Plaintiffs a constitutionally protected property interest in their continued employment.

*Fifth and finally*, to circumvent Plaintiffs protected religious and property interests, MSP distributed a seven (7) page letter amongst its top brass who were to use the boilerplate letter as the Order sustaining a finding of "employee misconduct" in the event any MSP challenged their unpaid suspension.

In sum, MSP attempted to evade liability for discriminating against Plaintiffs by frivolously asserting Plaintiffs engaged in "employee misconduct" when in reality, they merely exercised their fundamental right to Free Exercise and remained steadfast in their sincerely held religious beliefs. And to give the appearance that Plaintiffs were afforded due process for challenging the adverse employment action taken in retaliation for exercising their sincerely held religious beliefs, MSP utilized the aforementioned boilerplate template Order finding that Plaintiffs engaged in "employee misconduct", and that such a finding was supported by "sufficient evidence." Finally, once this letter was issued, MSP had fully executed its diabolical plan. Now, even if Plaintiff's lodged a substantive due process claim alleging that MSP's adverse employment action infringed upon their constitutionally protected property interest, MSP had an "Order" upon which it could rely and assert that the adverse employment action taken was lawful as it was taken with "just cause."

Thankfully, Captain Boutwell of the Office of Professional Integrity and Accountability, exemplified the very essence of his office and exposed the reprehensible scheme MSP concocted to oust its religious employees who valued their faith and exercised their rights in lieu of subscribing to MSP's ideological preferences.

**It is for these reasons this action is compelled.**

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and the Fifth and Fourteenth Amendments to the United States Constitution.

2.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

3.      Plaintiff Jessie Barbosa ("Barbosa") is an adult citizen of the United States residing in Middlesex County, Massachusetts and an MSP employee who has served as a State Trooper for 4 years as of January 2023. Barbosa is presently employed by MSP but has been placed on LWOP.

4.      Plaintiff Robert Johnson ("Johnson") is an adult citizen of the United States residing in Worcester County, Massachusetts and a former MSP employee who served as a State Trooper for 21 years. Johnson was constructively ousted from his employment as a result of MSP's unlawful conduct complained of herein.

5.      Plaintiff Darren Specht ("Specht") is an adult citizen of the United States residing in Worcester County, Massachusetts and a former MSP employee who served as a State Trooper

for 29 years. Specht was constructively ousted from his employment as a result of MSP's unlawful conduct complained of herein.

6.      Defendant Massachusetts Department of State Police ("MSP") is a department of the Commonwealth of Massachusetts constituted within the Massachusetts Executive Office of Public Safety, pursuant to M.G.L. c. 22C, §2, and is an employer within the meaning of Title VII and the MCRA.

## PROCEDURAL REQUIREMENTS

7.      Each respective Plaintiff has satisfied all state and federal statutory prerequisites to maintaining this action.

8.      Each respective Plaintiff is an MSP employee.

9.      On or about December 9, 2021, Jessie Barbosa filed a complaint for religious discrimination against MSP with the Massachusetts Commission Against Discrimination ("MCAD"). The religious discrimination complained of therein occurred within 300 days of her December 9, 2021 filing and more than ninety (90) days have passed since Barbosa filed her MCAD complaint in satisfaction of  M.G.L. c. 151B, §§5, 9. Barbosa also timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against MSP alleging religious discrimination in satisfaction of 42 U.S.C. §2000e5(b) and (e). The EEOC issued Barbosa her Notice of Right to Sue Letter on or about August 26, 2022, which is within ninety (90) days of filing this action in satisfaction of 42 U.S.C. §2000e–5(f)(1).

10.      On or about January 18, 2022, Robert Johnson filed a complaint for religious discrimination against MSP with the Massachusetts Commission Against Discrimination ("MCAD"). The religious discrimination complained of therein occurred within 300 days of his January 18, 2022 filing and more than ninety (90) days have passed since Johnson filed his MCAD

complaint in satisfaction of  M.G.L. c. 151B, §§5, 9. Johnson also timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against MSP alleging religious discrimination in satisfaction of 42 U.S.C. §2000e5(b) and (e). The EEOC issued Johnson his Notice of Right to Sue Letter on or about September 19, 2022, which is within ninety (90) days of filing this action in satisfaction of 42 U.S.C. §2000e–5(f)(1).

11.    On or about March 30, 2022, Darren Specht filed a complaint for religious discrimination against MSP with the Massachusetts Commission Against Discrimination ("MCAD"). The religious discrimination complained of therein occurred within 300 days of his March 30, 2022 filing and more than ninety (90) days have passed since Johnson filed his MCAD complaint in satisfaction of  M.G.L. c. 151B, §§5, 9. Specht also timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against MSP alleging religious discrimination in satisfaction of 42 U.S.C. §2000e5(b) and (e). The EEOC issued Specht his Notice of Right to Sue Letter on or about September 9, 2022, which is within ninety (90) days of filing this action in satisfaction of 42 U.S.C. §2000e–5(f)(1).

## STATEMENT OF FACTS

### A.  BACKGROUND

12.    On or about August 19, 2021, Massachusetts Governor Charlie Baker signed Executive Order 595 (the "Order"), requiring that *inter alia* all executive department employees provide proof of vaccination against COVID-19 and remain "fully vaccinated" against COVID-19 as a condition of continued employment.

13.    To comply with federal anti-discrimination law, the Order required the existence of a procedure by which state employees could obtain reasonable accommodations based upon *inter alia* their sincerely held religious beliefs.

14.     On or about September 10, 2021, MSP employees were advised as to the procedure by which they could submit requests for religious accommodations pursuant to the terms set forth in Executive Order 595.

15.     Then on or about September 22, 2021, MSP's Superintendent issued Memo 21-SM-14 to announce MSP's imposition of a progressive disciplinary regimen ("PDR") that culminated in the termination of any unvaccinated MSP employee, should they fail to become vaccinated against COVID-19 without an MSP approved religious or medical accommodation.

16.     Upon learning of this, each respective Plaintiff submitted their individual request for a religious accommodation based upon their sincerely held religious beliefs.[3]

17.     Upon receipt of Plaintiffs' religious accommodation requests, MSP scheduled interviews with each respective Plaintiff so that MSP had an opportunity to challenge the "religious nature" of Plaintiffs' sincerely held religious beliefs and whether their beliefs were "sincerely held. But the interviews were futile.

18.     Irrespective as to whether MSP found Plaintiffs' religious beliefs to be both, religious and sincerely held, the outcome remained unchanged as MSP baselessly asserted it could not accommodate its religious employees as doing so would impose an "undue hardship."

19.     MSP held the interviews it had scheduled with each respective Plaintiff and as stated above, MSP thereafter denied all three of their requests for religious accommodations[4] on the following grounds:

        a.    MSP found Barbosa's sincerely held religious beliefs to be sincere; however, it nevertheless refused to accommodate Barbosa on the erroneous

---

[3] Jessie Barbosa submitted her religious accommodation request ("RAR") on October 6, 2021; Robert Johnson submitted his RAR on October 8, 2021; and Darren Specht submitted his RAR on September 16, 2021.
[4] MSP denied Jessie Barbosa's RAR on November 26, 2021; MSP denied Robert Johnson's RAR on November 24, 2021; and MSP denied Darren Specht's RAR on November 24, 2021.

basis that doing so would impose upon MSP an undue hardship. The erroneous nature of this assertion is more fully explained below.

b. MSP erroneously found Johnson's sincerely held religious beliefs were "insincere" in light of his prior use of Tylenol and his statement that "there isn't any difference" between vaccinated and unvaccinated persons when it comes to their ability to contract and transmit COVID-19. Both bases are erroneous, in that Johnson cannot – and did not – sin by taking previous medications which may have and/or were developed through use of aborted fetal cell line tissue because Johnson did not know until present that such was the case. Had he known, Johnson would not have ever taken any such medication upon learning this information.

c. MSP found Specht's sincerely held religious beliefs to be sincere; however, it nevertheless refused to accommodate Specht on the erroneous basis that doing so would impose upon MSP an undue hardship. The erroneous nature of this assertion is more fully explained below.

20.    But interviews to consider Plaintiffs' religious accommodations were entirely futile.

21.    MSP merely conducted the interviews to give the appearance it facially complied with state and federal anti-discrimination law when in reality, MSP never intended on granting any religious accommodations. Instead, MSP utilized the interviews to assist in determining whether which basis MSP would elect in denying each respective Plaintiffs' request: (1) lack of sincerity of their religious beliefs; or (2) despite sincerely holding religious beliefs, the provision of a religious accommodation would impose upon MSP an undue hardship.

**B.  MSP'S PROGRESSIVE DISCIPLINARY REGIMEN & CONCOCTED "JUST CAUSE" SCHEME**

22.     Under Massachusetts state law, collective bargaining agreements ("CBA")  that prohibit the termination of a covered employee without just cause vest a fundamental property interest in the continued employment of any employee covered by the CBA.

23.     Here, each respective Plaintiff is covered by a CBA that prohibits their termination without cause. As such, each respective Plaintiff has a fundamental property interest in their continued employment. *See* U.S.C. Const. Amend. XIV; M.G.L.A. c. 150C, § 1 *et seq*.; M.G.L.A. c. 150E, § 1 *et seq*.

24.     Aware of this, MSP knew it could not fire Plaintiffs for failure to become vaccinated because not only would doing so give rise to a textbook religious discrimination case, but also, because terminating Plaintiffs without just cause would also violate their fundamental due process rights. And MSP knew Plaintiffs steadfast adherence to their sincerely held religious beliefs and MSP's insatiable appetite to oust any unvaccinated Trooper would inevitably culminate in a head-on collision between their rights and MSP's desires.

25.     MSP knew there was only one way it could terminate Plaintiffs and survive the aforesaid collision: MSP needed "just cause" to terminate Plaintiffs–and MSP knew no such "just cause" existed.

26.     But this did not stop MSP; rather, MSP abjectly disregard Plaintiffs' fundamental rights and concocted a scheme with the intent to surreptitiously manufacture the very "just cause" it needed to terminate Plaintiffs and thwart their inescapable legal challenge thereto.

27.     The scheme entailed waiting until October 18, 2021 – one day after the deadline to become vaccinated.  Once the deadline passed, MSP could then inform Plaintiffs that they were

non-compliant with the mandatory vaccination policy and that their non-compliance amounted to employee misconduct–and MSP did inform Plaintiffs they were non-compliant.

28.    MSP was fully aware that asserting Plaintiffs' enjoyment of their Free Exercise rights constituted non-compliance, and such non-compliance constituted "employee misconduct" was blatantly unconstitutional at all times relevant. But MSP did not care.

29.    MSP attempted to conceal their aforesaid illicit conduct by manufacturing a boiler plate, seven (7) page letter (the "Letter") to be used as the "sufficient evidence to prove employee misconduct." MSP top brass needed to do nothing more than tailor the portions of the letter highlighted in yellow to the specific information applicable to each Plaintiff, respectively.

30.    The to-be-tailored variables contained in the letter included without limitation, the date of issuance, the author's name, the intended recipient's name, salient dates concerning the intended recipient's accommodation request and MSP's denial thereof, the frivolous basis upon which the intended recipient's request was denied, and even a reference to a previous email titled "Information relative to your exemption denial"—including a specific instruction to "MAKE SURE EMAILS SAYS 'DENIAL', SOME HAVE SAID RESPONSE." The letter also required tailoring the answers to some fact-specific questions to which all MSP employees who sought religious accommodation had been previously ordered to respond.

31.    In carrying out this scheme, MSP intended to, and did, deprive Plaintiffs of their fundamental property interest in continued employment without due process of law in that, irrespective of their asserted sincerely held religious beliefs, MSP had already determined it would deny their request; the only question was whether the denial would be based on (1) lack of sincerity as to the beliefs held or (2) in the event MSP could not contest the sincerity, on the basis that accommodating religious employees imposed upon MSP an undue hardship.

32.    The aforesaid deprivation constitutes a violation of Plaintiffs' substantive due process rights.

33.    MSP further intended to, and did, deprive Plaintiffs of their fundamental right to due process by promulgating a scheme by which Plaintiffs had no opportunity to be heard after their fundamental property interest had been deprived because Plaintiffs exercised their sincerely held religious beliefs.

34.    As a result of MSP's blanket religious accommodation denials, and substantive and procedural due process violations, Plaintiffs sustained pecuniary and non-economic injuries, and even worse, by removing Plaintiffs from the line of service, MSP's own actions exacerbated the threats of danger force the citizens of Massachusetts face daily–the very people MSP is supposed to protect.

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**Violation of Title VII**

35.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

36.    Plaintiffs sincerely hold religious beliefs and are members of a protected class based on their religion.

37.    Plaintiffs are employees within the meaning of Title VII.

38.    MSP is an employer within the meaning of Title VII.

39.    Title VII forbids MSP from discriminating against Plaintiffs on the basis of their need for religious accommodations absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

40.    This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

41.    A plaintiff can therefore make out a prima facie case under Title VII by showing (1) she held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

42.    Here, each respective Plaintiff advised MSP of their individual sincerely held religious beliefs, including religious beliefs that: (1) vaccination is not morally obligatory in principle and so must be voluntary; (2) there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cell lines derived from direct abortions; (3) a person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings; (4) a person is morally required to obey his or her sure conscience; and that (5) abortion is a sin and contrary to the teachings of the Christian Church and as a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. Failure to abide by these sincerely held religious beliefs is a dereliction of their primary loyalty to God and, absent an accommodation, Plaintiffs could not comply with MSP's mandatory COVID-19 vaccination without violating their sincerely held religious beliefs.

43.    Plaintiffs informed MSP of this conflict and expressly sought an accommodation.

44.     In response to Plaintiff's request for an accommodation, MSP took an adverse action against them by refusing to accommodate Plaintiffs and by further discriminating and/or retaliating against Plaintiffs by placing Barbosa on unpaid leave and constructively ousting Johnson and Specht because Plaintiffs exercised their sincerely held religious beliefs. *See* 42 U.S.C. § 2000e-2(a)(1).

45.     Defendant made no efforts at all to accommodate Plaintiffs' sincerely held religious objection to MSP's mandatory COVID-19 vaccination policy and nevertheless placed Barbosa on unpaid leave and constructively ousted Johnson and Specht by forcing their undesired and early retirement[5] as doing so was the only means by which Johnson and Specht could avoid termination because of the conflict between MSP's arbitrary vaccination preferences and Plaintiffs' enjoyment of their constitutionally protected right to Free Exercise.

46.     Accommodating Plaintiffs would not, did not, and does not impose an undue hardship on MSP, as evidenced by the utilization of the COVID-19 mitigation protocols such as masks, weekly testing, and social distancing when appropriate.

47.     Moreover, accommodating Plaintiffs would not, did not, and does not impose an undue hardship whereas Plaintiffs who submit a weekly test evidencing they did not have COVID-19 need not take any further action to prevent the transmission of a disease they do not have.

48.     Other police departments who engage the identical line of work as MSP have not insisted on mandatory vaccination without allowing accommodations for objectors.

49.     As a direct and proximate result the conduct complained of herein, Plaintiffs have sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including

---

[5] Johnson and Specht retired as doing so was the only option available other than (1) violating their sincerely held religious beliefs, or (2) being forcibly terminated by MSP and irreparably tarnishing their otherwise stellar employment records.

lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT II
### SUBSTANTIVE DUE PROCESS
### Violation of U.S. Const. amend. V and XIV.

50.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

51.    Plaintiffs are covered employees under a CBA. Such CBA constitutes an employment contract.

52.    The CBA under which Plaintiffs are covered vests in each Plaintiff a constitutionally protected property interest in their continued employment.

53.    The CBA under which Plaintiffs are covered prohibits termination or adverse employment action absent proof of "just cause."

54.    The liberty protected by the Due Process Clause of the Fifth Amendment includes not only the privileges and rights expressly enumerated by the Constitution and Bill of Rights, but also includes the constitutionally protected property interest implicit in the concept of ordered liberty.

55.    The Fifth Amendment's Due Process Clause also applies to employees of the fifty states, including Plaintiffs, who serve as Massachusetts State Troopers.

56.    MSP's mandatory vaccination policy and related PDR infringe upon Plaintiff's constitutionally protected property interest in each respective Plaintiff's continued employment.

57.    MSP's PDR places a burden on Plaintiffs' aforesaid constitutionally protected property interest.

58. MSP's PDR is therefore subject to strict scrutiny. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702 (1997).

59. To survive strict scrutiny, MSP's PDR must be narrowly tailored to serve a compelling governmental interest.

60. "Narrowly tailored" is defined as "the least restrictive means necessary." *Shelton v. Tucker*, 364 U.S. 479 (1960).

61. MSP has not asserted any compelling governmental interest achieved as a result of placing Barbosa on LWOP and constructively ousting Johnson and Specht.

62. To the extent MSP asserts the compelling governmental interest achieved by placing Barbosa on LWOP and constructively ousting Johnson and Specht is in the interest of safety of the workforce and persons with whom Plaintiffs come into contact, such interest is not compelling because MSP allows other employees to maintain their employment free of adverse employment action despite their ability to contract and transmit COVID-19. As such, MSP clearly does not believe a compelling interest exists–otherwise, those employees would not be permitted to work either.

63. Alternatively, to the extent preserving the safety of the workforce and persons with whom Plaintiffs come into contact is a compelling interest, MSP's PDR is not the least restrictive means of doing so. As stated above, MSP allowed other employees to maintain their employment despite such employees being, at a minimum, equally as likely to contract and transmit COVID-19, if not *more* likely to contract and transmit the virus than employees who have naturally acquired antibodies yet nevertheless were subjected to adverse employment action.[6]

---

[6] Vaccination against COVID-19 does not prevent contraction or transmission of the virus and naturally acquired antibodies provide up to 27x the protection any of the currently available COVID-19 vaccines provide.

64.     MSP's PDR does not serve a compelling governmental interest because vaccination does not prevent the transmission or contraction of COVID-19.

65.     To the extent MSP's PDR does satisfy the interest of preserving the public health, MSP's PDR does not achieve a compelling governmental interest as "the least restrictive means necessary" because whether Plaintiffs were compensated while on suspension is immaterial to public health.

66.     MSP has infringed upon Plaintiffs' substantive due process right by taking adverse employment action against them that burdens their constitutionally protected property interest in their continued employment.

67.     As a direct and proximate result of the conduct complained of herein, Plaintiffs have sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT III
### PROCEDURAL DUE PROCESS
**Violation of U.S. Const. amend. V and XIV.**

68.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

69.     At all times relevant, each respective Plaintiff had a reasonable expectation that they would continue to be employed. This reasonable expectation is based upon each respective Plaintiffs' collective bargaining agreement, which operates as a contract and provides *inter alia* that Plaintiffs would not be terminated without "just cause".

70. Plaintiffs further had a reasonable expectation that they would continue to be employed because the Massachusetts Constitution and United States Constitution, as well as Massachusetts State Law and federal law provide protections against termination on the basis of one's exercise of his or her sincerely held religious beliefs.

71. Plaintiffs further had a reasonable expectation that they would continue to be employed because MSP has a policy that forbids discrimination on the basis of one's sincerely held religious beliefs.

72. MSP's refusal to accommodate Plaintiffs' sincerely held religious beliefs and thereafter, subjecting Plaintiffs to its PDR, MSP took adverse employment action against Plaintiffs by placing Barbosa on LWOP and by constructively ousting Johnson and Specht.

73. MSP took the aforesaid adverse employment action against Plaintiffs without due process of law, in that MSP (1) discriminated against Plaintiffs because of their religion, and as a result of the religious discrimination and MSP's failure to accommodate Plaintiffs' sincerely held religious beliefs, Plaintiffs could not satisfy MSP's October 17, 2021 vaccination deadline.

74. MSP was aware Plaintiffs could not satisfy the October 17, 2021 vaccination deadline because of their religious beliefs and disregarded their Free Exercise rights.

75. To cure for the underlying unlawful discriminatory practices, MSP concocted a Letter which it intended to use, and did use, as unlawful pretext for taking adverse employment action against Plaintiffs.

76. Specifically, MSP used the Letter as its "sufficient evidence" to support a finding of "employment misconduct" when the evidence was entirely manufactured.

77.    MSP knew the reason Plaintiffs were not vaccinated by October 17, 2021 was because Plaintiffs' sincerely held religious beliefs prohibited them from injecting a vaccine derived from aborted fetal cell line tissue into their bodies.

78.    Despite this, MSP utilized the manufactured letter as the purported basis upon which MSP "justified" a finding that Plaintiffs employment misconduct was supported by "sufficient evidence."

79.    By using evidence that was pretextual, false, and otherwise irrelevant as to the genuine reason MSP took adverse employment action against Plaintiffs, MSP deprived Plaintiffs of due process of law.

80.    Plaintiffs were not provided a hearing of any kind.

81.    Plaintiffs were not provided any pre-termination opportunity to respond.

82.    To the extent Plaintiffs were provided a hearing, MSP had already predetermined the inevitable outcome as evidenced by the prepared, manufactured and pretextual Letter MSP top brass was ordered to utilize in "making their decisions" that Plaintiffs engaged in employee misconduct and that such finding was supported by "sufficient evidence."

83.    Plaintiffs were not afforded any pre-termination proceedings by which Plaintiffs could avoid suffering adverse employment action.

84.    To the extent Plaintiffs were afforded pre-termination proceedings by which Plaintiffs could avoid suffering adverse employment action, the only means by which Plaintiffs could do so required Plaintiffs to violate their sincerely held religious beliefs. This is inadequate because Plaintiffs have a fundamental right to freely exercise their religion. U.S. Const. amend. I.

85.    Plaintiffs were not afforded any post-termination proceedings by which Plaintiffs could remedy the adverse employment action MSP had taken against them. Plaintiffs could not

appeal the decisions made in suspending and/or constructively ousting them from employment, and to the extent Plaintiffs had a "hearing", the outcome of any such hearing was pre-determined and based upon manufactured, false pretext.

86.    The aforesaid conduct constitutes an unlawful deprivation of each respective Plaintiffs' fundamental right to procedural due process pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, as applied to the states.

87.    As a direct and proximate result of the conduct complained of herein, Plaintiffs have sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT IV
### RELIGIOUS DISCRIMINATION
### Violation of the MCRA

88.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

89.    Plaintiffs are members of a protected class based on their religion.

90.    Plaintiffs are employees within the meaning of the MCRA.

91.    MSP is an employer within the meaning of the MCRA.

92.    The MCRA forbids MSP from discriminating against employees on the basis of their need for a religious accommodation absent proof that granting the accommodation would impose an undue hardship.

93.    Here, each respective Plaintiff advised MSP of their individual sincerely held religious beliefs, as described above.

94.     Plaintiffs informed MSP of the conflict between their sincerely held religious beliefs and expressly sought an accommodation.

95.     In response to Plaintiffs' accommodations, MSP took adverse action against them, as described above.

96.     Defendant made no efforts at all to accommodate Plaintiffs' sincerely held religious objection to MSP's mandatory COVID-19 vaccination policy and nevertheless placed Plaintiffs on unpaid leave.

97.     Accommodating Plaintiffs would not, did not, and does not impose an undue hardship on MSP.

98.     Other police departments who engage in the identical line of work as MSP have not insisted on mandatory vaccination without allowing accommodations for objectors.

99.     As a direct and proximate result of the aforesaid conduct and violation of the MCRA, Plaintiffs have sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this court:

A.     Order Defendant to drop all allegations and charges of employee misconduct and/or insubordination;

B.     Order Defendant to reinstate each Plaintiff, with backpay, and restore each respective Plaintiff to full duty status;

C.      Award Plaintiff back pay, prejudgment interest, and damages for all employment

benefits he would have received but for Defendant's discriminatory acts, from October 2011 to the

present;

D.      Award Plaintiff compensatory and punitive damages;

E.      Award Plaintiff reasonable attorneys fees;

F.      Retain jurisdiction over this matter until such time as this court is satisfied that the

unlawful acts at issue in this Complaint have ceased and that Defendant has complied with all

remedial orders of this court; and

G.      Award Plaintiff costs, interests, and such other relief as the court deems just and

proper.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS TRIABLE TO A JURY.**


Dated: November 23, 2022

                                      Respectfully submitted,

                                      /s/ BRADFORD R. STANTON
                                      Bradford R. Stanton [BBO 681913]
                                      GENS, STANTON, FLOREK, P.C.
                                      12 Ericsson Street
                                      Boston, MA 02122
                                      (617) 206-4675
                                      bstanton@genslawoffices.com


                                      /s/ WILLIAM E. GENS
                                      William E. Gens [BBO 556595]
                                      GENS, STANTON, FLOREK, P.C.
                                      12 Ericsson Street
                                      Boston, MA 02122
                                      (617) 206-4675
                                      billgens@genslawoffices.com

/s/ MICHAEL A. YODER
Michael A. Yoder* [VSB 93863]
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
(571) 234-5594
michael@yoderesq.com
*pro hac vice forthcoming


/s/ CHAD J. LAVEGLIA
Chad J. LaVeglia* [NYSB 4985115]
LAW OFFICE OF CHAD J. LAVEGLIA
350 Motor Parkway, Suite 308
Hauppauge, NY 11788
(631) 450-2468
claveglia@cjllaw.org
*pro hac vice forthcoming

*Counsel for Plaintiffs*