UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JESSIE BARBOSA, et al.,
Plaintiffs,

v.

MASSACHUSETTS DEPARTMENT OF STATE POLICE,
Defendant.

Civil No. 22-12013-LTS

**RESPONSE TO ORDER TO SHOW CAUSE OF WILLIAM E. GENS, ESQ.**

This submission is in response to the Court's Order to Show Cause of November 19, 2026. As a threshold matter, it should be noted that my services in this case were to act as local counsel and not for the purpose of making substantive legal decisions or strategic choices. I have also been hospitalized 6 times over the past year, incapacitated for other substantial intervals, and have as a result, apart from giving input on procedural concerns, deferred to lead counsel with regard to the substantive content and submissions to the court, including the summary judgment portion of this matter and the filings in the wake of the Court's summary decision.

Notwithstanding the above, I agree with the Court's analysis that with regard to Plaintiff Sepulveda as a formal matter I represent him and, in the absence of participation of prior and subsequent lead counsel (LaVeglia, Yoder, Pearson, and Daubert), I have an obligation to Plaintiff Sepulveda to represent his interests that goes beyond the duties of local counsel and I will undertake to do so. I have been in telephonic and written contact with Mr. Sepulveda and he has made his position clear with regard to the status of this matter and I will advocate and share his position below.

**QUESTIONS RAISED BY THE COURT**

Q (1) Why each (counsel) failed to respond to the Court's prior Order on behalf of their client, Sepulveda?

This counsel was under the mistaken impression that lead counsel would provide a sufficient response to the Court. Counsel was also under the incorrect assumption that new lead counsel (Attorney Daubert) had or would be entering an appearance for all of the plaintiffs in the case. When counsel learned that no sufficient response was forthcoming on behalf of Sepulveda, his office had to locate Sepulveda, conduct discussions with him, and reaffirm the goals of the representation as a prerequisite to providing a response to the Court.

Q (2) Whether the prior status reports and post-summary-judgment filings submitted on behalf of the "Plaintiffs" or the "Uniformed Troopers" were made on behalf of Sepulveda?

To my knowledge, the post summary judgment filings were submitted on behalf of the "Uniformed Troopers" who were subject to the Defendant's summary judgment motion and Sepulveda was not (and could not be) included amongst them.

Q (3) When and for what reason Sepulveda's claims split from those of the other plaintiffs?

The simple answer to this question is that the Defendant Massachusetts State Police did not bring a summary judgment motion against Plaintiff Sepulveda. This split the Troopers into two groups: Those that were given notice and opportunity to be heard on summary judgment and were therefore obligated to defend against the summary judgment and those that were not (Sepulveda).

Q (4) Why no attorney notified the Court of this change and/or withdrew their appearance as to Sepulveda?

The undersigned had to track down Plaintiff Sepulveda in Texas and consult with him regarding his position in this matter. Mr. Sepulveda has made clear that he wishes counsel to

represent him and that he desires “his day in court” to pursue his claims or to defend against summary judgment if necessary.

**PLAINTIFF SEPULVEDA’S POSITION**

Plaintiff Sepulveda is situated somewhat differently than the other “Uniformed Troopers” in two significant respects. First, as mentioned above, he was not a named plaintiff in the State Police’ Motion for Summary Judgment. As a matter of due process, he did not get notice and opportunity to be heard in opposition to summary judgment and was under no obligation to attempt to join in those proceedings or to address intentional or inadvertent omissions in the Defendant’s filings. Second, he objects to any retrospective joinder to the other plaintiffs on the grounds of commonality of legal position as his defense to summary judgment is substantially and qualitatively different from that advanced by the other troopers.

Plaintiff Sepulveda, in either a trial or a belated summary judgment motion, would raise issues that were not in his view sufficiently presented in the prior summary judgment proceedings. Without waiver of any issues of fact or law, Plaintiff Sepulveda proffers that SOME of the issues he would raise include collateral estoppel against the State Police who have “litigated and lost” dispositive issues in this case that were actually litigated and necessarily decided against it in other proceedings.

Attached to this filing is a 49 page opinion “IN THE MATTER OF ARBITRATION BETWEEN MASSACHUSETTTS DEPARTMENT OF STATE POLICE AND STATE POLICE ASSOCIATION OF MASSACHUSETTS AAA# 01-22-0001-5905, August 4, 2023. This decision makes it clear that, as in the present matter, claims were being litigated under M.G.L. c. 151B and Title VII of the Civil Rights act. The Decision expressly found that the process of granting religious exemptions and determining undue hardship was

unlawfully undertaken on a group basis as opposed to the required individualized determinations under the above statutes:

> "it became clearer that the eight Troopers were considered part of the larger group and not as individuals, which is a requirement under, 4.1E (c) and Title VII."
> Id. at p. 44
>
> "DSP is also required to perform an undue hardship analysis under Title VII and M.G.L. c. 151B, Section 4.1A and Section 4.1E (b) because the Department cannot just contend, it must prove that it could not individually accommodate each of the eight Troopers…"
>
> "… No evidence was submitted that the Department conducted this type of analysis when the determination was made in 2021."
> Id. at p. 45
>
> "Based upon the above, I conclude DSP did not properly administer the reasonable accommodation portion of the religious exemption request process"
> Id. at p. 47

The Decision also makes it clear that the State Police could not articulate a coherent distinction between its treatment of medical exemptions as opposed to religious exemptions, apart from acknowledging that it freely granted medical exemptions while denying all religious exemptions. See, discussion on pages 45 – 46 of the Decision.

This is not an exhaustive list of the issues actually litigated and necessarily decided in the proceedings in 2023, but it illustrates that Plaintiff Sepulveda has at the very least a meritorious claim that the State Police should be collaterally estopped from relitigating issues it litigated and lost in 2023.

Plaintiff Sepulveda would also make a more robust showing of how the scientific proof submitted by the State Police 1) Fell short of the requirements of F.R.E. Rules 702 and 703; and, 2) That the State Police showing does not satisfy the standard of strict scrutiny required for the abridgment of a fundamental right. An example of this deficiency is the affidavit submitted by

Doctor Lawrence Madoff. This affidavit contains a variety of naked assertions[1] regarding the alleged effectiveness of vaccines in preventing transmission together with 3 footnoted citations that do not support Madoff's claims. The footnoted studies do not satisfy the requirements of Federal Rule of Evidence Rule 702 requiring that expert testimony be based on sufficient facts of record and reliable data.

**STUDY #1:[2]**

> "*Most vaccines. ... **probably reduce**, the number of people who get COVID-19 dis*ease."

The study does not define the word "probably" or provide any rate of probability. This is therefore pure speculation or hypothesis and hardly the type of showing required to either support Madoff's claims or to satisfy strict scrutiny. The study goes further:

> "*There is probably little or no difference between most vaccines and placebo for serious adverse events*"

> "*Due to the trial exclusions, these results cannot be generalized to pregnant women, individuals with a history of SARS-CoV-2 infection, or immunocompromized people.*"

The limitations of this study (trial exclusions) means it has no value for pregnant women, for people who already had Covid, or for anyone with immunity problems. Dr. Madoff of course does not limit or qualify his opinion as to individuals in those groups and neither did the State Police in administering their vaccine policy.

**STUDY #2[3]**

This is a **non-peer reviewed study** of previously vaccinated people who nevertheless contracted one of the so-called variants of the "Delta" or "Alpha" designations.

---

[1] Madoff Affidavit ¶ 14: COVID-19 is considered to be a vaccine preventable disease.
Madoff Affidavit ¶ 15: The most effective method for preventing the spread of COVID-19 was (and is) widespread vaccination of a given population.

[2] Footnote 7, Study #1: https://www.cochranelibrary.com/cdsr/doi/10.1002/14651858.CD015477/full

[3] Footnote 7, Study #2: https://www.medrxiv.org/content/10.1101/2021.09.28.21264260v2

How a study of vaccinated people who got COVID anyway can be used to support the proposition that the vaccines prevent transmission is simply magical thinking.

The study also says:

> "*similar viral loads in vaccinated and unvaccinated individuals infected with Delta question how much vaccination prevents transmission*."

This qualification absolutely runs contrary to Madoff's expert opinion.

**STUDY #3**[4]

> "*Among index patients, those who had been vaccinated ... **might have been less infectious than those who were unvaccinated***."

"Might have been" is a hypothesis — a speculation. And Dr. Madoff has piled his speculation on top of the study's speculation and presented it as scientific fact.

The study goes on to recite a severe and fatal limitation to its methodology:

> "*Data are needed to inform the reduction in transmissibility of the virus after the receipt of two vaccine doses*."

In other words, this study has nothing to offer as proof that the requirement of being "fully vaccinated" (2 doses) as required by the MSP has any value in preventing transmission!

The above issues are some, but by no means all of the issues that Plaintiff Sepulveda would raise in this litigation that depart in whole or in part from the showing made by the other uniformed troopers.

**DATED: November 25, 2026**

Jason Sepulveda
By his attorney,

/s/ William E. Gens
William E. Gens, BBO#556595
Gens & Stanton, P.C.
12 Ericsson Street, 2nd Floor
Boston, MA 02122

[4] Footnote 7, Study #3: https://pubmed.ncbi.nlm.nih.gov/34161702
(see https://pmc.ncbi.nlm.nih.gov/articles/PMC8262621/ for text of full article)

(617) 936-4591
billgens@genslawoffices.com

CERTIFICATE OF SERVICE

I hereby certify that all factual representations made in the above document are true and that on this day a true copy of the above document was served upon the attorney of record for each other party by Email:

DATE: November 25, 2026 WEG